UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHARP MANAGEMENT, LLC,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

CASE NO. C07-402JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for a preliminary injunction and/or a temporary restraining order (Dkt. # 3) from Sharp Management, LLC ("Sharp"). The court has considered the papers filed in connection with the motion and finds the matter appropriate for disposition without oral argument. For the reasons stated below, the court DENIES Sharp's motion.

## II. BACKGROUND

This case arises from Sharp's alleged connection to David Goldston, a former dentist, now convicted tax evader. As of December 2006, Mr. Goldston owed the Government $209,143.20 in taxes associated with the operation of his dental practice.

ORDER – 1

Shatraw Decl. ¶ 8. It appears that Mr. Goldston, who is currently serving time in federal prison for tax evasion, has a long history with the Internal Revenue Service ("IRS").[1] In this instance, the Government[2] contends that it seized monies in Sharp's account based on its belief that Sharp is (or was) acting as Mr. Goldston's nominee.

According to IRS investigator John Shatraw, the following series of events precipitated the Government's seizure of funds held in Sharp's bank account. On February 6, 2006, Mr. Goldston and his wife relinquished their management duties over their personal trust to W.W. Investment Group, LLC ("WW Group"). Id. at ¶ 20-21. That same day, the beneficiary of the Goldston's trust, Sharp Management Trust, morphed into a limited liability company, Plaintiff Sharp Management, LLC. Id. at ¶ 23. Anne Constance Townley assumed the position of Trust Secretary, in Mr. Goldston's place. Id. at ¶ 22. Incidentally, Sharp's Director Jeff Townley (presumably Ms. Townley's relation) is the Director and Managing Member of WW Group. Id. at ¶ 19. WW Group, in turn, is one of two members of Sharp's corporate structure. Id. at ¶ 18.

A month later, on March 6, 2006, the building where Mr. Goldston operated his dental practice sold for $271,935.98. Id. at ¶ 9. WW Group executed the deed of sale. Two days later, $215,000 of the proceeds were wired to a Bank of America account, numbered XXXX3511. Id. at ¶ 10, 16. There is no dispute that the XXXX3511 account belongs to Sharp. In October 2006, the IRS issued levy notices to Bank of America in

---

[1] Indeed, Mr. Goldston is the defendant in two tax-related criminal cases pending in other district courts. See United States v. Goldston, Case No. 6-1873-JSM (M.D. Fla.); United States v. Goldston, Case No. 6-2153-REB (D. Colo.).

[2] Sharp names the IRS, IRS Agent John Shatraw, and John Does 1-10 in its pleading; however, Sharp may only maintain its action against the United States. See 26 U.S.C. § 7426(e). The court therefore dismisses any and all claims against the IRS, Mr. Shatraw, and the unnamed Does. The court refers to the United States in this order as "the Government."

ORDER – 2

order to reach the funds. Id. at ¶ 27; Townley Decl., Exs. 2, 3. The notices identify the name of the taxpayer as "David W. Goldston d/b/a/ Sharpstone Management a/k/a S&P Holding Ent." Townley Decl., Exs. 2, 3. The notices also provide that "the levy attaches to the right, title, and interest of David W. Goldston (Acct. # XXXX3511) and specified entity names but not limited to such." Townley Decl., Exs. 2, 3.

In response to the levy notices, Bank of America froze $20,000 of account funds. On November 12, 2006, the Government contends that it issued a revised levy notice naming "Sharp Management, LLC" as Mr. Goldston's nominee. Shatraw Decl. ¶ 29. The Government has not provided the court with a copy of the revised notice. In any event, Bank of America drew a check two days later in the amount of $19,892.62 from the account and sent it to the Government. Id. at ¶ 32. The Government also contends that the IRS served levy notices on two other companies for funds paid to them in May 2006 from account number XXXX3511.

In March 2007, Sharp filed a wrongful levy action against the Government and requested a temporary restraining order pending resolution of the action. The court denied Sharp's request for ex parte relief (Dkt. # 2), and instructed Sharp that it would consider a request for injunctive relief only upon notice to the Government. Sharp has now filed and served its motion for a preliminary injunction in which it requests that the court enjoin the Government from seizing any additional funds in its bank account.

### III.  DISCUSSION

**A.  Legal Standard**

Federal law strongly disfavors actions enjoining the collection of taxes. See 26 U.S.C. § 7421; Cool Fuel, Inc. v. Connett, 685 F.2d 309, 313 (9th Cir. 1982). The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ."

ORDER – 3

26 U.S.C. § 7421(a).  There are, however, statutory exceptions to this rule, including section 7426 on which Sharp bases its claim.  Id. (citing 26 U.S.C. § 7426(a), (b)). Under section 7426, a party – other than the delinquent tax payer – may seek injunctive relief to remedy a wrongful levy.  Id. at § 7426(a)(1), (b); see also Shannon v. United States, 521 F.2d 56, 60 n.10 (9th Cir. 1975) (discussing provision's legislative history). The injunctive relief provision provides:

> **Injunction.**--If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such
> property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

26 U.S.C. § 7426(b)(1).

Against this statutory backdrop, the court considers Sharp's motion in light of the familiar standard set forth in Rule 65 of the Federal Rules of Civil Procedure.  Sharp must demonstrate (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions exist and the balance of hardships tips in its favor.  Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005).  The two prongs of the test are not separate inquiries, but rather "extremes of a single continuum." Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003). Consequently, "the required degree of irreparable harm increases as the probability of success decreases."  Flowers, 408 F.3d at 1120.

**B.    Likely Success on the Merits**

When a taxpayer neglects or refuses to pay taxes, the IRS may, upon notice, levy upon the delinquent taxpayer's property.  26 U.S.C. § 6331(a).  Further, the IRS may seize such property even if it is held by the taxpayer's nominee or alter ego.  Valley Fin., Inc. v. United States, 629 F.2d 162, 171 (D.C. Cir. 1980); see also G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51 (1977).

ORDER – 4

A wrongful levy occurs when the IRS seizes property that in fact belongs to an innocent third-party, and not the delinquent taxpayer. 26 U.S.C. § 7426(a)(1). There are two prerequisites to a wrongful levy action: (1) that the plaintiff has an interest in the property in question, and (2) that the levy is wrongful (i.e., that the property does not belong to the taxpayer). Id. "The first of these requirements ensures standing; the second focuses on the . . . nexus between the taxpayer and the property." Flores v. United States, 551 F.2d 1169, 1171 (9th Cir. 1977).

If the plaintiff satisfies the first element at trial, the burden shifts to the government to come forth with evidence of a connection between the property and the taxpayer. Id. at 1175. If the government can establish this nexus, the plaintiff must prove that the property actually belongs to him or her. See Arth v. United States, 735 F.2d 1190, 1193 (1984). Here, the Government concedes that, as the owner of the Bank of America account, Sharp has an interest in the funds. The court therefore turns to Sharp's likelihood of success on proving, despite the Government's showing, that the levy is wrongful because Sharp is *not* Mr. Goldston's nominee.

In order to determine whether Sharp is Mr. Goldston's nominee,[3] the court would ordinarily turn to the law of the forum state. See Towe Antique Ford Found. v. IRS, 999 F.2d 1387, 1391 (9th Cir. 1993). In this instance, however, it appears that no Washington court has addressed nominee liability. The court therefore relies on factors that other courts in the Ninth Circuit have invoked to determine whether one party holds property as the nominee of another:

---

[3]Although both parties make casual reference to the alter ego doctrine, a close kin of the nominee theory, the court focuses on the latter based on the Government's contention that its revised levy notice listed Sharp as a "nominee" of Goldston, not as an alter ego. Shatraw Decl. ¶ 29. The court notes that the outcome would probably remain unchanged in evaluating the likelihood of success under either theory. Still, because the parties primarily focus their discussion on whether Sharp is a nominee, the court limits its ruling accordingly.

ORDER – 5

(a) No consideration or inadequate consideration paid by the nominee;

(b) Property placed in the name of nominee in anticipation of a suit or occurrence of liabilities;

(c) Close relationship between the transferor and the nominee;

(d) Failure to record conveyance;

(e) Retention of possession by the transferor; and

(f) Continued enjoyment by the transferor of benefits of the property.

United States v. Bell, 27 F. Supp. 2d 1191, 1195 (E.D. Cal. 1998); Colby B. Found. v. United States, Case No. 96-3073-CO, 1997 WL 1046002, *20 (D. Or. Oct. 22, 1997). On the whole, the nominee theory focuses on the relationship between the taxpayer and the property.

The court concludes that the Government has narrowly met its burden to show that there is a nexus between the Bank of America account funds and Mr. Goldston by virtue of a nominee relationship. Through Mr. Shatraw's declaration,[4] the Government provides evidence that the wire transfer to Sharp's account occurred just two days after the building sold. From this undisputed evidence, the Government argues that Mr. Goldston placed the property in Sharp's name to conceal income from the IRS. Along this vein, the Government highlights the circumstances of Sharp's formation, just one month prior to the sale of the building. The Government also provides evidence of a close relationship between Sharp and Mr. Goldston, including Sharp's status as the beneficiary of Mr. Goldston's personal trust, and an overlapping management structure between the two

---

[4] Sharp complains bitterly that Mr. Shatraw's declaration lacks corroborating evidence, contains hearsay, and is self-serving. The court agrees that, on a preliminary injunction motion, additional documentary evidence from *both* parties would assist the court in assessing the likelihood of success on the merits. Indeed, Sharp submits a total of five pages in support of its motion and neglects to provide some of the most basic details, such as the line of business in which Sharp engages.

ORDER – 6

entities. Further, according to the Government, the moniker "Sharp" raises questions because it is Ms. Goldston's maiden name and the name Mr. Goldston used (in part) for his dentistry business, "Sharpstone." Shatraw Decl. at ¶ 6-7. Although the Government fails to provide evidence in support of all of the above-cited factors, the court concludes that, as the non-moving party on a preliminary injunction motion, the showing is sufficient.

The court further concludes that, because Sharp has not provided any evidence to the contrary, it has failed to show that it is likely to succeed on the merits of its wrongful levy claim. In support of its motion, Sharp provides the declaration of its Director, Mr. Townley. Rather than coming forth with evidence to suggest that Sharp is an innocent third-party and *not* connected to Mr. Goldston, Mr. Townley thinly states that Sharp has never been "accused" or "charged" with acting as the dentist's nominee. Townley Decl. at 2. Nowhere in Mr. Townley's declaration does he disavow the relationship between Sharp and Mr. Goldston, or Sharp and other Goldston-related entities. Further, Mr. Townley does not explain why Sharp received the $215,000 of proceeds from the dentistry building into its account. Although the Government bears the initial burden of showing a nexus, Sharp will ultimately bear the burden at trial to show that the levies are wrongful and that the account funds actually belong to Sharp. Without more, the court concludes that Sharp has failed to show that it is likely to succeed on the merits of its claim.

Lastly, the court considers Sharp's contention that the Government wrongfully levied upon its property because the IRS failed to provide proper notice in contravention of 26 U.S.C. § 6331. Sharp fails to cite any authority for the proposition that the IRS must provide notice to both the delinquent taxpayer and the alleged nominee. Indeed, the plain language of the statute indicates that notice to the taxpayer is all that the law

ORDER – 7

requires. See 26 U.S.C. § 6331 (noting that the IRS may levy "upon . . . property of any *person* with respect to any unpaid tax only after the Secretary has notified *such person* in writing . . . ."); see also Sessler v. United States, 7 F.3d 1449, 1452 (9th Cir. 1993) (holding that third-party's claim that levy occurred without proper notice did not fit definition of "wrongful levy"). Accordingly, Sharp fails to show that it is likely to succeed in showing a wrongful levy based on improper notice.

**C.    Irreparable Harm**

Even if the court found that Sharp was likely to succeed on the merits, the motion nevertheless fails because Sharp cannot show irreparable harm to its rights in the seized funds. Indeed, the remedial provisions of section 7426 make the injury directly reparable. That is, if Sharp prevails at trial, the court may order the Government to return the funds or may grant judgment for Sharp in the amount of the funds levied upon, plus interest. See 26 U.S.C. § 7426(b)(2), (g); see also Al-Kim, Inc. v. United States, 650 F.2d 944, 948 (9th Cir. 1981).

Further, Sharp's contention that it will "have no funds to operate, will be unable to pay its counsel," and will lose future investment opportunities, is insufficient to merit injunctive relief. Mot. at 4. A temporary loss of funds and consequential financial difficulties does not constitute irreparable harm sufficient to justify an injunction against enforcement of tax liabilities. Cf. Cool Fuel, 685 F.2d at 314 (upholding denial of injunctive relief because payment of the tax followed by a suit for refund constitutes an adequate remedy at law). Rather, under the wrongful levy statute, irreparable harm exists only when the claimant can show that it will effectively lose rights to the property in question by virtue of the levy. See Ketcham v. United States, 783 F. Supp. 511, 518 (D. Nev. 1991); Jarro v. United States, 835 F. Supp. 625, 629-630 (S.D. Fla. 1992). Because the property in question is money – fungible property Sharp can recover should

ORDER – 8

it prevail on the merits – there can be no irreparable harm to Sharp's rights. See Jarro, 835 F. Supp. at 630 ("Temporary deprivation of money, in and of itself, cannot constitute irreparable harm, and certainly cannot satisfy the narrower term 'irreparable injury in property' [in section 7426(b)(1)].").

## IV.  CONCLUSION

The above order constitutes the court's findings of fact and conclusions of law. For the reasons stated, the court DENIES Sharp's motion for injunctive relief (Dkt. # 3). Dated this 8th day of May, 2007.

JAMES L. ROBART
United States District Judge

ORDER – 9